IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:10-CR-88-D
4:12-CV-201-D

| | |
|---|---|
| KAVIN DATRON WILLIAMS, ) | |
| ) | |
| Petitioner, ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

This case comes before the court on petitioner Kavin Datron Williams's pro se motion (D.E. 45) to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("petition" or "§ 2255 petition").[1] The government filed a motion (D.E. 56) to dismiss the petition.[2] By order entered 11 September 2013 (D.E. 71), Chief District Judge James C. Dever III granted the motion to dismiss in part and referred the sole remaining claim, whether trial counsel failed to file an appeal at petitioner's request, to the undersigned for an evidentiary hearing and the entry of a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Rule 8(b) of the Rules Governing Section 2255 Proceedings. The evidentiary hearing was held before the undersigned on 19 November 2013. (*See* D.E. 82). For the following reasons, it will be recommended that the government's motion to dismiss be granted as to the remaining claim and that this claim be dismissed.

---

[1] The petition included a memorandum in support (D.E. 45 at 14-30).

[2] The government filed a memorandum in support of the motion (D.E. 57) and one exhibit (D.E. 57-1). Petitioner filed a response in opposition (D.E. 68) and one exhibit (D.E. 68-1).

## BACKGROUND

**I.     Proceedings through Sentencing**

On 13 October 2010, petitioner was charged by indictment (D.E. 1) with one count of conspiring to distribute and to possess with intent to distribute more than 50 grams of cocaine base (*i.e.*, crack) and 500 grams or more of cocaine in violation of 21 U.S.C. § 846 ("count 1") and one count of possession with intent to distribute 5 grams or more of cocaine base (*i.e.*, crack) and quantities of marijuana and 3,4 methylenedioxymethamphetamine (*i.e.*, ecstasy) ("count 2"). At his initial appearance on the charges on 15 December 2010, petitioner was appointed counsel pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A. (D.E. 8). On 24 January 2011,[3] Attorney Rudolph A. Ashton, III formally entered his notice of appearance as petitioner's counsel. (D.E. 20).

At the arraignment and plea hearing on 21 March 2011 (D.E. 26) (collectively "arraignment hearing"), petitioner pled guilty to count 1 (Transcript of Arraignment Hearing ("Arr. Tr.") (D.E. 69) 27:23 to 28:22), and, pursuant to a plea agreement (D.E. 27), the government agreed to dismiss count 2.[4] Before petitioner entered his plea, the court explained to him, in detail, his various rights, including his right of appeal (Arr. Tr. 13:22 to 14:19; 24:22 to 25:19); the maximum sentence he faced for the charges to which he was pleading guilty (*id.* 21:12 to 22:7); and the court's role as making the final determination on his sentence, regardless of any estimate by his counsel (*id.* 23:5-23). Petitioner repeatedly acknowledged that he understood what the court had explained to him. (*Id.* 14:20 to 16:13; 21:21-23; 22:5-7; 23:14-15,

---

[3] Although Mr. Ashton appeared on defendant's behalf at the detention hearing on 20 December 2010 (D.E. 11), he did not file a notice of appearance until 24 January 2011 (D.E. 20). Further, while an earlier notice of appearance appears at D.E. 19, it contains an error in the caption, which presumably prompted the filing of an amended notice of appearance at D.E. 20.

[4] Count 2 was ultimately dismissed by the court at the sentencing hearing. (Transcript of Sentencing Hearing ("Sent. Tr.") (D.E. 52) 45:19-20).

22-23; 25:18-20). Petitioner also confirmed, when asked by the court, that no one had threatened him or forced him to plead guilty, or made any promise to him that induced him to plead guilty. (*Id*. 23:24 to 24:2; 25:21-23). In the plea agreement, petitioner made similar acknowledgements regarding sentencing and his appeal rights. (Plea Agmt. ¶¶ 2.c., 3.a. & c.).

On 2 September 2011, the court sentenced petitioner to 120 months' imprisonment. (Sent. Tr. (D.E. 52) 45:12-18; J. (D.E. 41) 2). After imposing the sentence, the court again explained to petitioner his appeal rights, including the requirement that any notice of appeal be filed within 14 days of the judgment, and specifically informed petitioner that if requested, "the Clerk of Court will prepare and file a notice of appeal on [his] behalf." (Sent. Tr. 46:21 to 47:15). Immediately following the sentencing hearing, Mr. Ashton met with petitioner in the courthouse holding cell. (Transcript of § 2255 Hearing (D.E. 84) ("Tr.") 12:18-25). It is during this meeting that petitioner claims he instructed Mr. Ashton to file an appeal. (Tr. 13:1-25).

## II. Petitioner's § 2255 Petition

On 29 August 2012, petitioner filed his § 2255 petition. In it, petitioner alleges as one ground that he received ineffective assistance of counsel because his trial attorney failed to file a notice of appeal at his request. (Pet. 5,[5] Ground 2). In the included supporting memorandum, petitioner more specifically alleges that he "did request Ashton to file an appeal," but that Mr. Ashton "refused to file an appeal" on the grounds that to do so would "[p]iss off the judge." (*Id*. at 18).

On 17 December 2012, the government filed its motion to dismiss the petition. Included with the supporting memorandum is a declaration (D.E. 57-1) of Mr. Ashton responding to petitioner's claims of ineffective assistance of counsel. Petitioner filed his response to the motion to dismiss on 29 February 2013 and submitted with it his own declaration (D.E. 68-1)

---

[5] Page citations to the petition are to page numbers assigned by the court's CM/ECF electronic filing system.

disputing Mr. Ashton's representations regarding whether petitioner requested an appeal. (Pet. Decl. ¶ 5).

On 11 September 2013, Chief Judge Dever granted the government's motion to dismiss in part and dismissed all of the claims raised in the petition except for the one referred to, and now pending before, the undersigned. (11 Sept. 2013 Order 7).

## APPLICABLE LEGAL STANDARDS

### I.     28 U.S.C. § 2255

Pursuant to 28 U.S.C. § 2255, a prisoner may seek correction or vacation of a sentence on the grounds that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). The burden is on the petitioner to establish his claim to relief by a preponderance of the evidence. *See, e.g., Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam) ("Because the proceeding under 28 U.S.C. § 2255 is a civil collateral attack upon the judgment of conviction, the burden of proof is upon petitioner to establish [his claim] by a preponderance of evidence . . . ."); *Toribio-Ascencio v. United States*, Nos. 7:05-CR-00097-FL, 7:08-CV-211-FL, 2010 WL 4484447, at *1 (E.D.N.C. 25 Oct. 2010) ("In a § 2255 proceeding, the burden of proof is on petitioner to establish his claim by a preponderance of the evidence.").

### II.    Ineffective Assistance of Counsel

To state a claim of ineffective assistance of counsel, a petitioner must satisfy a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). First, a petitioner must show that the representation he received fell below an objective standard of reasonableness. *Id.* at 688.

The reviewing court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." *Id.* at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Concerning the second prong, a petitioner must show that he was prejudiced by the ineffective assistance. *Id*

The *Strickland* test applies to claims that counsel was constitutionally ineffective for failing to file a notice of appeal. *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). In *Flores-Ortega*, the Supreme Court held that:

> [C]ounsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Id.* at 480. The Court further emphasized that it "employ[ed] the term 'consult' to convey a specific meaning–advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id*. at 478. "We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id*. (citing *Rodriquez v. United States*, 395 U.S. 327 (1969)). "[A] defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice." *Id*. "If counsel has consulted with the defendant, the failure to file an appeal is deficient only if it contradicts the defendant's instruction to appeal." *Hudson v. Hunt*, 235 F.3d 892, 896 (4th Cir. 2000).

### III. Legal Standards for Determining Credibility

In assessing the credibility of witnesses, trial courts consider "variations in demeanor and tone of voice." *Anderson v. City of Bessemer, N.C.*, 470 U.S. 564, 575 (1985). In addition,

5

"[d]ocuments or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *Id.*; *see also United States v. Marcavage*, 609 F.3d 264, 281 (3rd Cir. 2010) (applying factors in *Anderson* in holding that trial court's crediting of the government's evidence was error on the grounds that "[t]here are simply too many inconsistencies and gaps in the testimony of the government's witnesses, not to mention substantial contradictions between that testimony and other evidence in the record"). Additional considerations can include the witness's motive to lie and the level of detail in the witness's statements. *See, e.g., United States v. Wilson*, 624 F.3d 640, 665 (4th Cir. 2010).

**DISCUSSION**

The court finds that petitioner has failed to show by a preponderance of the evidence that he instructed[6] Mr. Ashton to file an appeal. Instead, the credible evidence establishes that during Mr. Ashton's discussion with petitioner immediately following the sentencing hearing, petitioner did not instruct Mr. Ashton to file an appeal on his behalf. Petitioner's ineffective assistance of counsel claim on this ground accordingly fails.

As an initial matter, there appears to be no dispute that Mr. Ashton, as required, consulted with petitioner regarding an appeal immediately following his sentencing hearing on 2 September 2011. (*See* Pet. Decl. ¶ 5 (describing in detail his discussion with Mr. Ashton about an appeal following the sentencing hearing); Ashton Decl. ¶¶ 7, 8 (same)). Both petitioner and Mr. Ashton testified at the hearing that they discussed Mr. Ashton's opinion that there was no basis for an appeal, especially given the fact that petitioner had received a variance that resulted in a sentence of 10 years, well below the calculated guideline range of 17 to 22 years. (Tr. 13:6

---

[6] The terms "instructed," "requested," "told," "asked," and like terms describing an expression by petitioner to Mr. Ashton that he wanted Mr. Ashton to file an appeal were used interchangeably at the hearing and are so used herein.

to 14:8; 38:16 to 39:3). They also each testified that they discussed the effect that the filing of an appeal could have on the possibility of the government later filing a motion seeking a reduction of his sentence for substantial cooperation under Rule 35[7] ("Rule 35 motion") (Tr. 14:9 to 15:9; 25:20 to 26:1; 39:4 to 40:22).

There being no dispute that Mr. Ashton consulted with petitioner regarding an appeal, the sole issue before the court is whether, as a result of this discussion, petitioner instructed Mr. Ashton to file an appeal. While petitioner testified that he did make this request (Tr. 13:7-24), Mr. Ashton testified that no such request was made (Tr. 41:1-4). Upon consideration of the testimony presented and other evidence of record, the court finds that petitioner did not request Mr. Ashton to file an appeal.

Fundamental to the court's conclusion is that it finds Mr. Ashton's testimony on the material factual issues to be credible. First, Mr. Ashton's testimony was matter-of-fact, not adversarial, in tone. He evinced no hostility, but rather genuine concern about achieving the best possible outcome in petitioner's criminal case. His credibility is further supported because of his

---

[7] Rule 35 provides, in relevant part, as follows:

(b) Reducing a Sentence for Substantial Assistance.

(1) In General. Upon the government's motion made within one year of sentencing, the court may reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person.

(2) Later Motion. Upon the government's motion made more than one year after sentencing, the court may reduce a sentence if the defendant's substantial assistance involved:

(A) information not known to the defendant until one year or more after sentencing;

(B) information provided by the defendant to the government within one year of sentencing, but which did not become useful to the government until more than one year after sentencing; or

(C) information the usefulness of which could not reasonably have been anticipated by the defendant until more than one year after sentencing and which was promptly provided to the government after its usefulness was reasonably apparent to the defendant.

Fed. R. Crim. P. 35(b).

7
Case 4:10-cr-00088-D   Document 87   Filed 02/05/14   Page 7 of 12

substantial experience as a criminal defense attorney. He has been representing defendants in federal criminal cases for nearly 30 years. (Tr. 32:14-18).

Moreover, Mr. Ashton's conduct in representing petitioner, as described in his testimony, is consistent with that of an experienced criminal defense lawyer. Mr. Ashton's testimony demonstrates a conscientious and proper effort on his part to make sure that petitioner understood the advantages and disadvantages of appealing and not appealing. As previously noted, Mr. Ashton testified credibly that he told petitioner that, in his judgment, there was no basis for an appeal. (Tr. 38:16-20). Indeed, petitioner's 10-year sentence was significantly lower than his calculated guideline range of 17 to 22 years, which any reasonable defense attorney in the instant criminal case would view as a favorable outcome that did not warrant further challenge on appeal. In addition, petitioner had, with limited exceptions, waived his right to appeal his sentence in the plea agreement, thereby further eroding any justification for an appeal. (*See* Plea Agmt. ¶ 2.c.; *see also* Arr. Tr. 24:22 to 25:20 (petitioner acknowledging his understanding of the appellate waiver provision in the plea agreement after having it read to him in its entirety by the court); Tr. 20:25 to 21:5 (petitioner's testimony acknowledging the waiver of his appeal rights in the plea agreement)). Mr. Ashton's determination that an appeal was not warranted is more than reasonable under the facts presented.

Mr. Ashton credibly testified that he explained to petitioner that filing an appeal could eliminate any chance he might have for a future reduction of his sentence on the grounds of substantial assistance because, in Mr. Ashton's experience, the government followed a policy of not filing a Rule 35 motion when a defendant appeals his sentence. (Tr. 39:19 to 40:22). Mr. Ashton also credibly testified that he believed petitioner had a chance for a Rule 35 motion because he had provided information to law enforcement regarding a co-defendant in the instant

criminal case and had recently provided information to the government regarding possible counterfeiting that he learned while housed at Harnett County jail. (Tr. 39:4 to 40:13). Mr. Ashton's testimony is supported by the statement of the Assistant United States Attorney at the sentencing hearing that, while the prior assistance provided by petitioner in the instant criminal case had not constituted substantial assistance, he thought "there may be some new information coming that may lead to a [Rule 35] motion later." (Sent. Tr. 38:13-17). The responsible manner in which Mr. Ashton advised petitioner about his appeal rights lends credibility to his testimony regarding other aspects of his representation of petitioner.

On the disputed issue of whether petitioner asked or directed Mr. Ashton to file an appeal, Mr. Ashton unequivocally testified that petitioner did not. (Tr. 40:23 to 41:4; 44:25 to 45:2; 54:10-12). He further testified that petitioner seemed pleased with the outcome of the sentencing (Tr. 38:8-10; 41:13-14), told him that he had done a "good job" (Tr. 41:2-4; 54:16-18), and appeared to agree that there was no basis for an appeal (Tr. 40:23 to 41:2; 45:15-18). This testimony is consistent with Mr. Ashton's notes from the meeting. (*See* Hrg. Ex. G2 at 1 (handwritten notes stating "good job" and "no appeal")). In addition, petitioner himself testified that he told Mr. Ashton he had done a good job. (Tr. 26:2-4; 13:7-8). Finally, there is no evidence that Mr. Ashton had any motive to refuse any request by petitioner to file an appeal. Instead, Mr. Ashton testified that "[e]very client that has ever asked me or told me to appeal, whether I agree with them or not, I file the appeal." (Tr. 66:6-8). The court finds all this testimony by Mr. Ashton regarding whether petitioner asked or directed him to appeal credible.

While Mr. Ashton's testimony is consistent and corroborated by the record, the same cannot be said of petitioner's testimony. Petitioner testified inconsistently on material matters at the hearing, and some of his testimony was inconsistent with the declaration he filed with his

9

response to the government's motion to dismiss. For example, at the hearing petitioner initially testified that he did not know that "he only had 10 days to file an appeal," but rather believed he had a year to do so. (Tr. 17:15-23). He explained that he did not learn that he was mistaken about the one-year time period until after he arrived at the prison facility in Pennsylvania and the inmates there informed him otherwise. (Tr. 17:23 to 18:1). Petitioner then directly contradicted this testimony when he later testified that Mr. Ashton told him after the sentencing hearing that he "had like 10 or 14 days to appeal." (Tr. 27:2-7). He also confirmed that Chief Judge Dever informed him at sentencing that he had 14 days to appeal. (Tr. 24:24 to 25:1; *see also* Sent. Tr. 47:9-11).

Further, petitioner initially testified that, after his conference with Mr. Ashton following sentencing on 2 September 2011, he again discussed an appeal with Mr. Ashton in a conference call after he arrived at a prison facility in Pennsylvania. (Tr. 17:2-14). He stated that during this call he asked about an appeal and that Mr. Ashton responded that he had not filed an appeal because he did not think it was necessary. (*Id.*). This testimony is inconsistent with petitioner's declaration, which contains no reference to this alleged conference call with Mr. Ashton. Instead, the only conference with counsel about an appeal after the day of sentencing the declaration mentions is a call in January 2012 with Assistant Federal Public Defender Laura S. Wasco, who apparently represented petitioner at the time. (*See* Pet. Decl. ¶ 8).

In addition, petitioner's testimony that he had a subsequent discussion with Mr. Ashton about an appeal was directly contradicted by his later testimony that he did not discuss the issue of an appeal with Mr. Ashton again after 2 September 2011. Specifically, petitioner testified:

> Q    Now, how many times did you request or ask Mr. Ashton to file [an] appeal on your behalf from the judgment that was entered on September 2, 2011?

| | |
|---|---|
| A | September 2, that is when I asked him and then -- |
| Q | On that date of that conference, how many times did you raise the issue of him appealing the judgment? |
| A | I asked him after I got sentenced in the lock up and that is when he was telling me he didn't think the appeal would be necessary. |
| Q | After he told you that, you didn't ask him again to do anything with the appeal? |
| A | Ungh-ungh. |
| Q | Why not? |
| A | Because he told me it wouldn't be necessary and he didn't want to piss the judge off. So now, you know, I am thinking if I push him to do the appeal, if I go back in front of the judge and get more time, that is what he was telling me not to do. |

(Tr. 19:13 to 20:5).

By this testimony, petitioner not only contradicts his earlier testimony that he discussed an appeal with Mr. Ashton after 2 September 2011, but he also contradicts his testimony that he requested an appeal even after Mr. Ashton explained that he saw no basis for one. (Tr. 25:2 to 26:4). This and the other inconsistencies noted undermine petitioner's credibility both generally and specifically as to his contention that he instructed Mr. Ashton to file an appeal.[8]

As a final point, the court notes that if petitioner had, in fact, instructed Mr. Ashton to file an appeal, it is reasonable to expect that petitioner would have contacted him to follow up on the appeal, for example, to confirm that it had been filed, find out what was going on in the appeal, and learn what the next steps were. There is no evidence, though, that petitioner did ever make any such contact with him.

---

[8] Petitioner's demeanor did not provide meaningful insight into his credibility. His demeanor did not vary materially with the questions posed to him.

For the foregoing reasons, the court concludes that petitioner did not request Mr. Ashton to file an appeal on his behalf. Petitioner has therefore failed to show that in not filing an appeal Mr. Ashton contravened any instructions the petitioner had given him. Petitioner's claim of ineffective assistance of counsel based on the alleged failure to file an appeal as instructed should therefore be dismissed.

## CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that the government's motion (D.E. 56) to dismiss petitioner's claim of ineffective assistance of counsel for failure to file an appeal be GRANTED and that this claim be DISMISSED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 19 February 2014 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 calendar days after service of the objections on the responding party, but in no event later than 5 March 2014.

SO ORDERED, this the 5th day of February 2014.

_____
James E. Gates
United States Magistrate Judge